UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/23/2023

MARTIN J. WALSH, Secretary of Labor, United States Department of Labor,

        Petitioner,

   -against-

GERALD M. UPRIGHT, JR., individually, and CAROL L. UPRIGHT, individually,

        Respondents.

No. 22-MC-247 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Before the Court is a petition to enforce administrative subpoenas *duces tecum* and *ad testificandum* (the "Administrative Subpoena") issued by the United States Department of Labor ("DOL"), Wage and Hour Division ("WHD") (the "Petition") as to Respondents Gerald M. Upright ("Gerald"), individually, and Carol M. Upright ("Carol"), individually (collectively, "Respondents"). (ECF No. 1.) WHD issued the Administrative Subpoena in connection with its investigation concerning Respondents' compliance with the Fair Labor Standards Act of 1938 ("FLSA" or the "Act"), as amended, 29 U.S.C. § 201 et seq. Petitioner Martin J. Walsh, Secretary of Labor, United States Department of Labor ("Petitioner" or the "Secretary") then commenced this miscellaneous action seeking to enforce the Administrative Subpoena.

    For the reasons set forth herein, the Secretary's Petition is GRANTED and Respondents' cross-motion to quash the Administrative Subpoena and for a protective order in the event Respondents are determined not to have a rational as well as factual understanding of the proceedings (the "Cross-Motion") is DENIED. Additionally, the statute of limitations under the

1

FLSA is tolled from July 8 until the Secretary notifies the Court that Respondents have provided complete responses to the Administrative Subpoena, as set forth below.

## BACKGROUND

The following facts are sourced from the parties' submissions and are undisputed, unless otherwise noted.

In November of 2021, the WHD opened an investigation into Respondents regarding their compliance with the Act. (ECF No. 4, at 2.) Pursuant to this investigation, on December 8, 2021, WHD Investigator Vanessa Phillips ("Phillips") sent a document request to Respondents by UPS and, on the following day, USPS first class mail. (*Id.*) The request directed Respondents to provide responsive documents to WHD by December 15, 2021, as well as appear for a telephone conference with WHD on December 16, 2021. (*Id.*) Phillips' phone calls to Respondents on December 16, 2021, were not answered. (*Id.*)

After Phillips received no response to her first document request, she prepared, and WHD Supervisor Denise Fernandez ("Fernandez") attempted to hand deliver on March 2, 2022, a second document request. (*Id.*) When no one answered despite apparent movement inside, Fernandez left the second document request in Respondents' mailbox. (*Id.*) However, Respondents failed to contact WHD in connection with this request (*Id.*, at 3.)

Because Respondents never contacted WHD regarding either of its two requests for documentation and a telephone conference, WHD issued an administrative subpoena *duces tecum* and administrative subpoena *ad testificandum* to each Respondent in their individual capacities (the "Administrative Subpoena"). (*Id.*) The Administrative Subpoena ordered Respondents to each produce documents to WHD by July 8, 2022 and appear for testimony at WHD's White Plains New York Area Office on July 13, 2022. (*Id.*) Specifically, the Administrative Subpoena sought

time and pay records for all current and former employees from June 23, 2019 to the present as well as testimony from Respondents regarding their employment practices. (*Id.*) A process server hired by WHD attempted, and failed, to serve Respondents at their home multiple times between June 24, 2022 and July 6, 2022. (*Id.*) Consequently, the process server deposited the Administrative Subpoena at the door of Respondents' home on July 7, 2022 and WHD sent copies of it via UPS Overnight delivery, which also arrived on July 7, 2022. (*Id.*)

On July 11, 2022, Dan Harris ("Harris"), an attorney acting for Respondent Gerald, contacted Fernandez regarding the Administrative Subpoena. (*Id.*) That day, Harris spoke with an attorney with the DOL's Office of the Solicitor ("DOL Attorney"), who told Harris that the DOL had issued the Administrative Subpoena to Respondents. (*Id.*) After the DOL Attorney explained that the WHD was willing to push back the required dates for Respondents' testimony and production of documents pursuant to the Administrative Subpoena, Harris requested copies of the Administrative Subpoena and stated that he would speak with Respondents and reach back out to discuss the Administrative Subpoena with the DOL Attorney. (*Id.*, at 4.)

The DOL Attorney subsequently called Harris on July 21, 2022, after not hearing back from Harris. (*Id.*) Harris said that, although he had spoken with Respondents about the Administrative Subpoena, he would not represent Respondents; he further noted that Respondents told him they were confused why the DOL was "bothering" them but suggested that the DOL Attorney call Respondents directly. (*Id.*) However, the DOL Attorney did not receive a response when he did so. (*Id.*)

On August 23, 2022, the DOL Attorney mailed a letter to Respondents granting them a final opportunity to comply with the Administrative Subpoena on or before August 30, 2022, as well as spoke to Respondent Carol via telephone. (*Id.*) Respondent Carol confirmed that she

received notice of the Administrative Subpoena and that she discussed it with Harris, and she requested that the DOL Attorney call her the following day to schedule Respondents' testimony. (*Id.*) Yet, when the DOL Attorney did so, Respondents did not answer the telephone. (*Id.*) Moreover, Respondents failed to make any further attempt to comply with the Administrative Subpoena. (*Id.*)

Respondents do not dispute these facts. However, they assert that Respondent Carol has agreed to make herself available for deposition purposes since the beginning of October 2022. (ECF No. 24, at 5.) They also claim that the Respondents are elderly "with mental states that may make it difficult to understand these proceedings and respond to the [Administrative Subpoena]." (*Id.* At 7.)

As a final matter, although Respondents claim that, in October of 2022, they ultimately offered dates for the Secretary to depose Respondent Carol, the Secretary alleges that Respondents were ultimately unwilling to provide testimony. (*Id.*) Specifically, the Secretary claims that he was prepared to accept Respondents' proposal to depose Respondent Carol prior to the entry of a court order on this matter if Respondents entered into a tolling agreement. (ECF No. 25, at 7.) Respondents, however, instead filed their opposition to the Petition after Petitioner consented to multiple requests from Respondents for an extension. (*Id.*)

**PETITION TO ENFORCE LEGAL STANDARD**

Consistent with the FLSA's purpose of correcting and eliminating "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers ...," the Act authorizes the Secretary to:

> "investigate and gather data regarding the wages, hours, and other conditions and practices of employment in any industry subject to this chapter, and ... enter and

> inspect such places and such records (and make such transcriptions thereof), question such employees, and investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of this chapter, or which may aid in the enforcement of the provisions of this chapter."

29 U.S.C. § 211(a). To that end, the DOL is vested with the authority to issue subpoenas requiring "attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation." 15 U.S.C. § 49; *see* 29 U.S.C. § 209 ("For the purpose of any hearing or investigation provided for in this chapter, the provisions of [15 U.S.C. § 49] ... are made applicable to the jurisdiction, powers, and duties of the Administrator [and] the Secretary of Labor...."). Subpoenas issued pursuant to these provisions are enforceable in "any court of the United States...." 15 U.S.C. § 49; *see Donovan v. Mehlenbacher*, 652 F.2d 228, 230 (2d Cir. 1981) ("[T]he Department of Labor clearly has the power to issue subpoenas in the course of an investigation conducted under statutory authority, and to have those subpoenas enforced by federal courts." (citing *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494 (1946))).

In an action to enforce an administrative subpoena, such as the instant case, judicial review is "extremely limited." *E.E.O.C. v. United Parcel Serv.*, Inc., 587 F.3d 136, 139 (2d Cir. 2009) (*quoting N.L.R.B. v. Am. Med. Response, Inc.*, 438 F.3d 188, 192 (2d Cir. 2006)). The Secretary is only required to demonstrate: (i) that the investigation is being conducted pursuant to a legitimate purpose; (ii) that the inquiry may be relevant to that purpose; (iii) that the information sought is not already within the DOL's possession; and (iv) that the required administrative steps have been followed. *See id*. "It is well established that an affidavit from a government official, attesting that each of [these] requirements has been met, is sufficient to establish a prima facie case" for

5

enforcement. *United States v. Navarro*, 304 F.App'x 908, 910 (2d Cir. 2008). Indeed, administrative agencies "'ha[ve] a power of inquisition' akin to that of a grand jury, which [they] may exercise 'merely on suspicion that the law is being violated, or even just because [they] want[] assurance that it is not.'" *In re McVane*, 44 F.3d 1127, 1135 (2d Cir. 1995) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43, 70 S. Ct. 357, 364 (1950)).

A party opposing enforcement of an administrative subpoena "must shoulder the burden of showing that the subpoena is 'unreasonable' or was issued in bad faith or for an 'improper purpose,' or that compliance would be 'unnecessarily burdensome.'" *RNR Enterprises, Inc. v. S.E.C.*, 122 F.3d 93, 97 (2d Cir. 1997) (quoting *S.E.C. v. Brigadoon Scotch Distrib.*, 480 F.2d 1047, 1056 (2d Cir. 1973)). However, "[t]hat burden is not easily met where ... the agency inquiry is pursuant to a lawful purpose and the requested documents are relevant to that purpose." *N.L.R.B. v. Bacchi*, No. 04 MC 28, 2004 WL 2290736, at *3 (E.D.N.Y. June 16, 2004) (citations and internal quotation marks omitted) (ellipses in original).

## DISCUSSION

The Secretary seeks an Order: (1) compelling Respondents to fully comply with the Administrative Subpoena; and (2) tolling the statute of limitations under the FLSA from July 8 (the date that Respondents failed to comply with the Administrative Subpoena) until such time as the Secretary notifies the Court that Respondents have complied with the Administrative Subpoena. (ECF No. 8.) Respondents oppose the Secretary's motion to compel, arguing that Respondent Carol has indicated she is available to sit for a deposition and that there is no showing that the facts involve interstate commerce. (ECF No. 24, at 4.) Additionally, Respondents claim that the Court should deny Petitioner's request to equitably toll the statute of limitations because the Secretary has failed to meet his burden that Respondents delayed the Secretary's investigation.

(*Id.*) And, finally, Respondents move for a protective order against the Secretary's request for depositions until a professional evaluates their mental states to determine whether they have a rational understanding of these proceedings. (*Id.*)

Applying the standards outlined *supra*, and for the reasons set forth herein, the Court: (1) GRANTS the Secretary's Petition; (2) tolls the statute of limitations under the FLSA from July 8, 2022, until the Secretary notifies the Court that Respondents have fully complied with the Administrative Subpoena; and (3) DENIES Respondents' Cross-Motion to quash the Administrative Subpoena and for a protective order.

### I.     The Secretary's Petition is Granted and Respondents' Cross-Motion to Quash the Administrative Subpoena is Denied

As discussed *infra*, the Court grants the Secretary's Petition and denies Respondents' Cross-Motion to quash the Administrative Subpoena because the Secretary has shown: (1) that its investigation will be conducted pursuant to a legitimate purpose; (2) that its inquiry may be relevant to this purpose; (3) that the information sought through its investigation is not already with its possession; and (4) that it has followed the requisite administrative steps. *See RNR Enters., Inc. v. SEC*, 122 F.3d 93, 96 (2d Cir.1997).

#### A.  Legitimate Purpose

The Secretary has the authority to "investigate and gather data regarding the wages, hours, and other conditions and practices of employment ... and investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of the [FLSA]." 29 U.S.C. § 211(a). Here, in exercising its authority under the FLSA, the WHD has undertaken the investigation at issue and served the Administrative Subpoena to determine whether Respondents have complied with the requirements of the FLSA,

including the Act's minimum wage, overtime, and recordkeeping requirements. (ECF No. 1, at 2.); *see* 29 U.S.C. § 211(c) (requiring employers to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him....").

Accordingly, the Secretary has established that its investigation is being conducted pursuant to a legitimate purpose. *See Perez v. Lasership, Inc.*, No. 3:15-MC-00031, 2015 WL 11109330, at *3 (D. Conn. Sept. 18, 2015) (citing 29 U.S.C. § 211(a) as granting authority to the DOL to issue an administrative subpoena in connection with an investigation into violations of the FLSA).

### B. Relevance

"A court's authority to review a subpoena's relevance is limited to determining whether the evidence sought touches a matter under investigation." *N.L.R.B. v. Bacchi*, No. 04 MC 28, 2004 WL 2290736, at *3 (E.D.N.Y. June 16, 2004) (citations and internal quotation marks omitted); *see Am. Med. Response*, 438 F.3d at 193 ("In enforcing administrative subpoenas, courts broadly interpret relevancy[.]"). "The initial determination of what information is reasonably relevant is left to the investigating agency.*" In re Gimbel*, 77 F.3d 593, 601 (2d Cir. 1996). District courts then "defer[ ] to 'the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong[.]'" *Am. Med. Response*, (quoting *McVane*, 44 F.3d at 1135).

Here, the Secretary has met his very low burden to establish that the documents sought by WHD are reasonably relevant to its investigation. The Administrative Subpoena, for instance, requests pay and time records for Respondents' domestic service employees as well as testimony from Respondents pertaining to their employment practices. (ECF No. 1, at 2.). These requested documents and testimony are, undoubtedly, reasonably relevant to the Secretary's investigation

8

into whether Respondents have complied with the requirements of the FLSA, including the Act's minimum wage, overtime, and recordkeeping requirements. (*Id.*); *see* 29 U.S.C. § 206 (establishing FLSA wage requirements); 29 U.S.C. § 207 (establishing FLSA maximum hour requirements); 29 U.S.C. § 211 (establishing FLSA collection of data requirements); and 29 U.S.C. § 202(a) (establishing that employment of persons in domestic service in households affects commerce); *see also Acosta v. Fusilli at Miller Place, Inc.*, No. 18-MC-426 (DRH)(SIL), 2018 WL 4635735, at *4 (E.D.N.Y. May 7, 2018), *report and recommendation adopted*, No. 18-MC-426 (DRH)(SIL), 2018 WL 3302183 (E.D.N.Y. July 5, 2018).

### C. Access to Documents

As noted *supra*, the Administrative Subpoena requests pay and time records for Respondents' domestic service employees as well as testimony from Respondents pertaining to their employment practices. (ECF No. 1, at 2.). Respondents' practices concerning employee hours and wages, including Respondents' record keeping, are highly relevant to any potential claim or claims arising under the FLSA. *See, e.g.*, 29 U.S.C. § 207 (limiting the number of hours an employee may work without receiving overtime compensation); 29 U.S.C. § 211(c) (requiring employers to maintain accurate records of its employees' hours). Thus, given that no information pertaining to Respondents' employment practices are in the Petitioner's possession,[1] the "access to documents" requirement is satisfied. *Acosta*, 2018 WL 4635735, at *7 (finding that the "access to documents" requirement was satisfied where the Secretary sought information regarding the respondents' internal practices concerning employee compensation and did not have access to this information).

---

[1] The Secretary asserts that he does not have any information pertaining to Respondents' employment practices and Respondents do not dispute this claim. (EC No. 4, at 8.)

### D. Required Administrative Steps

The FLSA expressly authorizes the DOL and its representatives to "investigate and gather data regarding the wages, hours, and other conditions and practices of employment in any industry subject to this chapter, and [to] enter and inspect such places and such records ..., question such employees, and investigate such facts, conditions, practices or matters as [it] may deem necessary or appropriate to determine whether any person has violated any provision of this chapter." 29 U.S.C. § 211(a). The FLSA likewise grants the DOL authority to issue subpoenas of the type at issue here. *See* 29 U.S.C. § 209 75 Fed. Reg. 55.352 (Sept. 10, 2010) (making applicable to the Secretary of Labor statutory provisions authorizing the Federal Trade Commission to compel via subpoena the production of documentary evidence relating to any matter under investigation, as well as redelegation of this subpoena authority to Wage Hour regional administrators); *see also Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 214, 66 S.Ct. 494, 90 L.Ed.2d 614 (1946) ("Congress has authorized the [WHD] ... to determine the question of coverage in the preliminary investigation of possibly existing violations; in doing so to exercise his subpoena power for securing evidence upon that question, by seeking the production of petitioners' relevant books, records and papers; and, in case of refusal to obey his subpoena, issued according to the statute's authorization, to have the aid of the District Court in enforcing it."). Thus, there are no procedural defects in WHD's issuance of the Administrative Subpoena, which was issued to investigate the conditions that Respondents' employees experienced, signed by a regional administrator of the WHD, and served on Respondents at their home.[2] (ECF No. 4, at 8.)

---

[2] Significantly, Respondents do not even suggest that the Secretary failed to follow the required administrative steps in issuing the Administrative Subpoena.

Since the Secretary has established its prima facie case as detailed *supra*, and Respondents have failed to rebut Petitioner's showing, enforcement of the Administrative Subpoena as described herein is appropriate.

**II.     The Statute of Limitations is Equitably Tolled**

Courts in the Second Circuit have applied the doctrine of equitable tolling to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances. *See Fitzgerald v. Henderson*, 251 F.3d 345, 373 (2d Cir. 2001); *see also Cabrera v. Stephens*, No. 16CV3234, 2017 WL 4326511, at *7 (E.D.N.Y. Sept. 28, 2017) ("[A] district court may toll the limitations period to avoid inequitable circumstances, giving due consideration to whether the plaintiffs have acted with reasonable diligence in pursuing their claims and whether the circumstances are extraordinary enough to warrant equitable relief.") (citation and internal quotation marks omitted). The statute of limitations under the FLSA is two years for non-willful violations and three years for willful violations. *See* 29 U.S.C. § 255.

Here, the Court finds that a reasonable tolling of the statute of limitations under the FLSA is appropriate. The Secretary's submissions demonstrate that WHD has been reasonably diligent in conducting its investigation (as detailed in part (I.) of this Opinion and Order), and Respondents' complete failure to comply with the Administrative Subpoena (with the possible minor exception that, in October of 2022, Respondent Carol represented she would make herself available to provide testimony) constitutes extraordinary circumstances warranting the application of equitable tolling. *See Acosta*, 2018 WL 4635735, at *7 (E.D.N.Y. May 7, 2018) (equitably tolling the statute of limitations where the respondents "failed to provide responses to a vast majority of demands in the Administrative Subpoena" that the WHD issued). Accordingly, the statute of limitations under

the FLSA is tolled from July 8, 2022 (i.e., the return date of the Administrative Subpoena) until Respondents have complied with the Administrative Subpoena.

### III. Respondents' Cross-Motion for a Protective Order is Denied

The Court construes Respondents' request for a protective order in its cross-motion as a motion for a protective order pursuant to Federal Rule of Civil Procedure 26(c) ("Rule 26(c)"). "Rule 26(c) grants district courts discretion to grant a protective order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, but the moving party bears the burden of establishing good cause for such a protective order." *Qube Films Ltd. v. Padell*, 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015) (internal quotation marks omitted). "[I]t is well recognized that entirely prohibiting the taking of an oral deposition is very unusual." *Id.* (citing *In re McCorhill Publ'g, Inc.*, 91 B.R. 223, 225 (Bankr. S.D.N.Y. 1988) (*citing* 8 Alan A. Right and Arthur R. Miller, Federal Practice and Procedure § 2037 (1986 Supp.))); s*ee also Jennings v. Fam. Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001) ("[I]n the case of a protective order related to deposition testimony, courts regard the complete prohibition of a deposition as an 'extraordinary measure[ ] which should be resorted to only in rare occasions.'" (collecting cases)).

"Courts in this circuit have noted that, '[f]or purposes of a protective order, "good cause" is established when a party is able to show that a "clearly defined, specific and serious injury" will occur in the absence of such an order.'" *Qube Films*, 2015 WL 109628, at *2 (quoting *McDonnell v. First Unum Life Ins. Co.*, 2012 WL 13933, at *1 (S.D.N.Y. Jan. 4, 2012)). "Furthermore, broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, are not sufficient to satisfy the burden." *Id.* (internal quotation marks omitted and alteration adopted). Protective orders therefore "are generally not granted where the contentions of a treating physician are conclusory or speculative in nature." *Id.*; *see also Jennings*, 201 F.R.D. at 274–75.

Respondents seek a protective order against the Administrative Subpoena's request for testimony until a professional evaluates their mental states on the basis that Respondents are allegedly "two elderly, possibly senile individuals" with "mental states that may make it difficult to understand these proceedings and respond to the subpoenas." (ECF No. 24, at 8.; and ECF No. 23, at 1.) However, these bare allegations of possible senility are plainly insufficient to constitute "good cause" such that the Court should issue a protective order; they amount to "broad allegations" of harm that are "unsubstantiated by specific examples or articulated reasoning." *See Rekor Sys., Inc. v. Loughlin*, No. 19-CV-7767 (LJL), 2022 WL 488941, at *2 (S.D.N.Y. Feb. 17, 2022) (noting that the defendants failed to show "good cause" even where a neurologist found that the individual from which the plaintiff sought a deposition was suffering from dementia resulting from Alzheimer's disease.); *see also See Jennings*, 201 F.R.D. at 274–75 (failing to find "good cause" where plaintiff relied on "conclusory, speculative statements" to support a motion for a protective order to prevent the deposition of an individual who reportedly suffered from dementia and depression and who could suffer "great harm" if subjected to the stress of an adversarial proceeding that could potentially overwhelm the individual's coping abilities).

## CONCLUSION

For the foregoing reasons, the Secretary's Petition is GRANTED and Respondents' Cross-Motion is DENIED.

It is hereby ORDERED that Respondents appear at the Wage and Hour Division, White Plains Area Office, 140 Grand Street, Suite 304, White Plains, NY 10601 during business hours within fourteen (14) days of this Opinion and Order, on or before March 9, 2023, to produce all documents and testimony requested in the Administrative Subpoena.

It is further ORDERED that the running of the statute of limitations under the FLSA is tolled from July 8, 2022 until the Secretary notifies the Court that Respondents have complied with the Administrative Subpoena.

| | |
|---|---|
| Dated: February 23, 2023<br>White Plains, New York | SO ORDERED:<br><br>_____<br>NELSON S. ROMÁN<br>United States District Judge |